[No. B003330. Second Dist., Div. Five. Feb. 8, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LEE ARTHUR ICENOGLE, Defendant and Respondent;
IRA REINER, as City Attorney et al.,
Real Parties in Interest and Appellants.

**COUNSEL**

Ira Reiner and Gary R. Netzer, City Attorneys, Frederick N. Merkin, Senior Assistant City Attorney, and S. David Hotchkiss, Deputy City Attorney, for Real Parties in Interest and Appellants.

No appearance for Plaintiff and Respondent.

Ellery S. Sorkin for Defendant and Respondent.

**OPINION**

**FEINERMAN, P. J.**—This is an appeal from a court order requiring appellants to return $5,680 in cash which was seized in a criminal case involving Lee Arthur Icenogle (Icenogle). Appellants contend that the subject money was forfeited to the federal government pursuant to federal statute and that the court abused its discretion in ordering them to restore property

which was no longer under their control. Without reaching the question of whether the federal government properly "adopted" the original seizure,[1] we agree that the trial court erred in its order and reverse the judgment.

## BACKGROUND

On December 9, 1982, Los Angeles police executed a search warrant at Icenogle's residence,[2] and they arrested him for possession of a controlled substance in violation of Health and Safety Code section 11351. One of the arresting officers then phoned an agent of the United States Drug Enforcement Administration to report that in connection with having served a search warrant on a suspected heroin dealer, the officer had seized more than $5,000 in cash. Shortly thereafter, federal agents went to talk to the officer at police headquarters.

After telling the federal agents that he thought that the money seized represented proceeds from drug sales,[3] the police officer voluntarily gave them Icenogle's money pursuant to 21 United States Code section 881(a)(6).[4] The agents gave the officer a receipt for the cash, but the police officer did not forward a copy of the receipt to Icenogle.

On March 14, 1983, the Drug Enforcement Administration sent a registered letter to Icenogle to notify him that the agency was taking steps to forfeit the seized money pursuant to 19 United States Code sections 1607-1618. That notice went unclaimed, and when the United States Post Office returned it to the Drug Enforcement Administration, the agency published notice in the Los Angeles Daily Journal[5] that the currency seized from

---

[1]The United States may "adopt" another government's seizure of property (*United States v. One Ford Coupe Automobile* (1926) 272 U.S. 321 [71 L.Ed. 279, 47 S.Ct. 154, 47 A.L.R. 1025]), as long as the original seizure does not violate the United States Constitution. (*Elkins* v. *United States* (1960) 364 U.S. 206 [4 L.Ed.2d 1669, 80 S.Ct. 1437].)

[2]The search warrant named a subject other than Icenogle at the address specified. The warrant did not authorize the seizure of currency. We do not deal with the question of whether officers had probable cause to seize Icenogle's money.

[3]In addition to $5,680 found in one of Icenogle's suit jackets, the police seized $460 in cash from the subject named in the search warrant. When federal agents visited the police station, they were not told of the lesser sum because the arresting officer did not think the amount was large enough to interest them.

[4]21 United States Code section 881(a)(6) provides as follows: "The following shall be subject to forfeiture to the United States and no property right shall exist in them: . . . [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter . . . or . . . to facilitate any violation of this subchapter, except that no property shall be forfeited . . . to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner."

[5]The Los Angeles Daily Journal is a newspaper published weekdays in Los Angeles and is an official newspaper of the City and County of Los Angeles.

Icenogle was subject to administrative forfeiture pursuant to 19 United States Code section 1608. Icenogle did not contest the probable cause for the seizure in United States District Court, and the money was administratively forwarded to the United States Treasury. (19 U.S.C. § 1608.)

On August 29, 1983, following his plea and sentencing,[6] Icenogle moved under Penal Code section 1536 for return of the money seized by the Los Angeles police. On October 4, 1983, the court held an order to show cause hearing and ordered "that the Los Angeles Police Department return the property in question . . . within 30 days or the cash equivalent in the sum of $5,680.00."

## DISCUSSION

■ Appellants assert that the trial court exceeded its authority in mandating the return of Icenogle's money under Penal Code section 1536 because the money had already been forfeited to the federal government under 21 United States Code section 881(a)(6). Upon review, we have concluded that the trial judge exceeded his jurisdiction and improperly sought to grant a civil remedy to Icenogle under the cover of a criminal procedure section inapplicable to the facts of the instant case.

■ Penal Code section 1536 provides that "[a]ll property or things taken on a warrant must be retained by the officer in his custody" subject to court order. Case law clearly establishes that both during and after the pendency of a criminal action, section 1536 empowers the court to entertain a summary proceeding by "nonstatutory" motion, for the release of property seized under a search warrant.[7] (*People* v. *Superior Court* (1972) 28 Cal.App.3d 600, 609 [104 Cal.Rptr. 876]; *Buker* v. *Superior Court* (1972) 25 Cal.App.3d 1085, 1089 [102 Cal.Rptr. 494].) An officer who takes such property does so on behalf of the court for use in a judicial proceeding, and "[h]e must respond, as does any custodian, to the orders of the court for which he acted." (*Gershenhorn* v. *Superior Court* (1964) 227 Cal.App.2d 361, 366 [38 Cal.Rptr. 576].)

■ At the hearing on the order to show cause, there was uncontroverted testimony that an officer turned over Icenogle's money to federal agents and that he acted without a court order or a formal demand from the agents themselves. While it may be argued that the officer should have

---

[6]Icenogle was sentenced to two years in prison for violation of Health and Safety Code section 11351.

[7]A defendant may also move for the return of property seized, with or without the authority of a search warrant, on statutory grounds pursuant to Penal Code section 1538.5. The record before us discloses no such statutory motion.

retained custody of the property pending such an order or request, the fact is that he did not.

When the trial court ordered appellants to reimburse Icenogle, it was essentially making an award of damages, a remedy not authorized in a criminal proceeding.[8] Unlike the cases upon which the trial court and Icenogle rely, this is not an instance where the property at stake was in the possession of the court and thus was subject to a motion for release. (*Buker* v. *Superior Court, supra,* 25 Cal.App.3d 1085; *Gershenhorn* v. *Superior Court, supra,* 227 Cal.App.2d 361.) Here, there was no *res* upon which the provisions of Penal Code section 1536 could operate. The seized currency was never placed in evidence, was never marked as an exhibit and was never in control of the superior court. Accordingly, the court erred in trying to treat an alleged civil wrong within the parameters of a criminal proceeding.

The judgment is reversed.

Hastings, J., and Eagleson, J., concurred.

The petition of defendant and respondent for a hearing by the Supreme Court was denied April 3, 1985.

---

[8]We venture no opinion on the appropriate civil remedy or the chances for its ultimate success.