[No. A106116. First Dist., Div. Four. June 29, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
$25,000 UNITED STATES CURRENCY, Defendant;
PAUL L. FIELDS, JR., Defendant and Appellant.

## Counsel

David Martin Michael, Mark P. Harris and Ean Vizzi for Defendant and Appellant.

Margaret Mary Fleming and Gary W. Schons for Plaintiff and Respondent.

## Opinion

**SEPULVEDA, J.**—The police seized $25,000 in cash during a warrant-authorized search of a residence for drugs. The superior court issued an order transferring the money to the federal government, and the federal government has instituted proceedings to declare the money forfeited as drug sale proceeds. (21 U.S.C. § 881(a)(6).) Appellant Paul L. Fields, Jr., claims ownership of the disputed property, and challenges the superior court's turnover order. We affirm the order.

### FACTS

On March 5, 2000, Arcata police officers searched a residence for marijuana pursuant to a search warrant issued by a Humboldt County Superior Court judge. The officers seized a duffel bag containing $25,000 in $100 bills during the course of the search. Appellant Paul L. Fields, Jr., who was visiting the residence at the time of the search and seizure, claimed ownership of the money. No criminal charges relating to this incident were ever filed against Fields.

On March 6, 2000, the Humboldt County District Attorney's Office issued a receipt for the seized currency, with notification that "procedures to forfeit this property are underway" under California statutory provisions authorizing forfeiture of proceeds traceable to drug sales. (Health & Saf. Code, § 11469 et seq.) The notification stated that anyone with an interest in the currency must file a claim within 30 days. (Health & Saf. Code, § 11488.5, subd. (a).)

Fields filed a claim for the currency in the Humboldt County Superior Court on March 23, 2000. On March 27, 2000, the Humboldt County Drug Task Force referred the currency to the federal Drug Enforcement Agency (DEA) for commencement of federal forfeiture proceedings, in lieu of state proceedings. (21 U.S.C. § 881(a)(6).) No state petition of forfeiture was ever filed.[1]

On April 5, 2000, the Humboldt County District Attorney's Office wrote to the DEA, saying that the county would transfer the currency to the federal authorities without a court order, and advising the DEA that "[n]o turn-over order is required." Physical possession of the currency was apparently given to the DEA, where it rests today, although the record is not clear on this point. It is clear, however, that the Humboldt County Superior Court did not consent to the transfer in April 2000.

Fields was unaware of the federal government's adoption of the seized currency. On March 25, 2001, Fields's attorney contacted the Humboldt County District Attorney's Office to request return of the currency on grounds that the one-year statute of limitations for initiating a state forfeiture action had expired. (Health & Saf. Code, § 11488.4, subd. (a).) Fields was informed of the DEA's adoption of the currency for federal forfeiture.

Meanwhile, the federal government had filed a forfeiture complaint and the currency was declared forfeited in December 2000 under administrative forfeiture provisions when the complaint went unanswered. That declaration of forfeiture was vacated by a federal district court on May 5, 2003, upon Fields's demonstration that the government failed to provide him with adequate notice of the federal proceedings. The federal five-year statute of limitations on forfeitures had not yet run, and the federal government filed another complaint on May 20, 2003. (19 U.S.C. § 1621; 21 U.S.C. § 881(d).) This second complaint was dismissed on September 16, 2003. The federal district court held that Humboldt County Superior Court acquired in rem

---

[1] It is suggested on appeal that this case is improperly captioned, as the People did not file a petition of forfeiture against Fields. Any change in captioning at this stage of litigation would only confuse matters, and thus we maintain the case name assigned by the lower court.

jurisdiction of the currency, by virtue of the search warrant it issued and Fields's pending claim for the property, and continued to have exclusive jurisdiction unless and until a turnover order was issued by the state superior court.

On November 4, 2003, the Humboldt County District Attorney's Office filed in superior court a "Request for Release of Seized Property (Penal Code Section 1536)" and submitted a supporting affidavit and proposed order. The prosecutor served Fields's attorneys with the documents by mail. On November 6, 2003, without waiting for any opposition by Fields, the superior court issued an "Order to Release Property[,] [¶] Nunc Pro Tunc." The court ordered the seized currency previously released to the DEA to be formally released to the DEA for federal forfeiture proceedings, expressly relinquishing "any and all jurisdiction it has to the $25,000 in U.S. Currency."

On December 19, 2003, Fields moved to set aside the release order and to return the currency to him. Fields claimed that he was denied proper notice of the People's request for release to the DEA, and that the running of the state statute of limitations on forfeitures precluded the court from issuing any order except an order of dismissal. The People opposed Fields's motion to vacate the release order and, following a hearing, the court denied the motion on January 26, 2004. The court reaffirmed its November 2003 "turnover order," stating that "the mere inadvertence of the prosecution" in failing to obtain the order earlier "should not result in the inability of the federal court to hear the matter on the merits." The federal government then filed a new forfeiture complaint in federal district court on January 30, 2004.[2] That federal action has been stayed pending resolution of this appeal by Fields, in which he challenges the superior court's January 2004 order.

## DISCUSSION

### A. *Appealability*

There are several preliminary matters requiring resolution before turning to the merits of Fields's appeal. First, the Humboldt County District Attorney argues that the challenged order is not appealable. The California Attorney General, as amicus curiae, joins in that argument. The argument has merit. The right of appeal is purely statutory. (*People v. Gershenhorn* (1964) 225 Cal.App.2d 122, 125 [37 Cal.Rptr. 176].) "Only such actions of the trial court

---

[2] We have taken judicial notice of federal court records pertaining to this matter, as requested by appellant Fields. (Evid. Code, § 452, subd. (d)(2).)

may be reviewed on appeal as the Legislature has selected." (*Ibid.*) The challenged order is not listed among those that the Legislature has selected for appeal, and Fields has not identified any other statutory authority for his appeal. (Code Civ. Proc., § 904.1; see Health & Saf. Code, § 11488.5, subd. (c)(3) [Code of Civil Procedure provisions apply to forfeiture actions].) Nor has Fields presented any reason why the rule of nonappealability applicable to orders denying the release of property under Penal Code provisions (*People v. Gershenhorn*, at pp. 125–126) is not equally applicable to his claim for the return of property seized for civil forfeiture.

It appears that the proper avenue of redress was through a petition for a writ of mandate, not an appeal. (See *People v. Gershenhorn, supra,* 225 Cal.App.2d at p. 126 [discretionary review by writ of mandate available for order denying release of property].) However, dismissal of the appeal at this juncture, after all proceedings in the superior court have ceased and the issues have been fully briefed in this court, would only delay resolution of the proper disposition of the disputed currency. The matter has already occupied years of litigation in federal and state courts. The unusual circumstances presented by this case warrant treating the purported appeal as a petition for writ of mandate and thus reaching the merits. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].)

### B. *Jurisdiction*

The Attorney General, however, raises another claimed impediment to our reaching the merits. The Attorney General claims that we lack jurisdiction to hear Fields's appeal because possession of the res ($25,000) is the source of in rem jurisdiction, and therefore jurisdiction was lost when the superior court transferred the res to the DEA. The Attorney General is effectively arguing that trial court orders adjudicating disposition of the res are immunized from review upon execution of the order. In rem jurisprudence does not dictate such a result.

■ " 'Forfeiture is a civil in rem action in which the property is proceeded against as a defendant on the legal fiction that the property itself is the guilty party.' " (*People v. 6344 Skyway, Paradise, California* (1999) 71 Cal.App.4th 1026, 1032 [84 Cal.Rptr.2d 198].) As the Attorney General rightly notes, it is a bedrock principle that an in rem action requires that the court have actual or constructive possession of the subject of the suit (the res) in order to proceed with the cause. (*Penn Co. v. Pennsylvania* (1935) 294 U.S. 189, 195–196 [79 L.Ed. 850, 55 S.Ct. 386].) The Attorney General concedes that the superior court *acquired* jurisdiction of the $25,000 in currency (the res) upon seizure of the currency pursuant to a warrant issued

by that court: "When property is seized pursuant to a warrant, although it might be physically held by law enforcement officials, it is in the de jure custody, control and jurisdiction of the issuing magistrate . . . ."[3] However, the Attorney General argues that the superior court *lost* jurisdiction when it released the currency pursuant to its November 2003 turnover order.[4]

█ If the superior court's turnover order went unchallenged and became a final order, there would be force to the Attorney General's argument that state court jurisdiction has terminated. However, Fields filed a motion to vacate the turnover order and then appealed the court's denial of that motion. We believe that the state courts, specifically this court, retain constructive in rem jurisdiction over the res until review of the validity of the physical disposition of the res is complete. At least one California court has held, in a case not addressed by the parties in their briefing, that once in rem jurisdiction is acquired, the subsequent disbursement of the res pursuant to court order does not deprive the appellate court of jurisdiction to hear the claimant's appeal challenging the validity of the disbursement order. (*People v. $8,921 United States Currency* (1994) 28 Cal.App.4th 1226, 1232–1233 [34 Cal.Rptr.2d 210].)

In *People v. $8,921 United States Currency*, the trial court denied a claimant's motion to set aside a default judgment in a drug money forfeiture action and the money was disbursed before the appeal was heard. (*People v. $8,921 United States Currency, supra*, 28 Cal.App.4th at pp. 1230–1231.) The appellate court rejected the People's claim that it lacked jurisdiction to hear the appeal because possession of the res was lost when the trial court released the money. (*Id.* at pp. 1231–1232.) The United States Supreme Court has likewise held that "in an *in rem* forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the res from the district." (*Republic Nat. Bank of Miami v. United States* (1992) 506 U.S. 80, 88–89 [121 L.Ed.2d 474, 113 S.Ct. 554].) The Supreme Court rejected the government's claim in a drug forfeiture case that actual and continuous possession of the res is required to sustain in rem jurisdiction. (*Id.* at pp. 84–85.)

---

[3] There is some controversy as to whether the seizure of property pursuant to a court-issued warrant alone vests the issuing court with in rem jurisdiction. (*In re Seizure of Approx. 28 Grams. of Marijuana* (N.D.Cal. 2003) 278 F.Supp.2d 1097, 1102–1107.) The Attorney General's concession obviates any need for us to weigh in on that controversy.

[4] As noted earlier, the physical location of the currency is not firmly established on this record. We will assume that the DEA has possession of the currency and address the Attorney General's argument.

In addition to challenging this court's jurisdiction, the Attorney General also seems to suggest that the appeal is moot because we no longer have any control over the res. We disagree. The federal forfeiture action has been stayed pending resolution of this state court appeal. The federal district court previously declined jurisdiction over the currency for lack of a turnover order, and directed the property's return to the superior court. We are confident that the district court would do so again were the subsequently obtained turnover order invalidated on appeal.

The Attorney General's reliance upon *City of San Jose v. Superior Court* (1987) 195 Cal.App.3d 743 [240 Cal.Rptr. 882], and similar cases, is misplaced given the different posture of this case. *City of San Jose* held that a trial court has no power to order property returned to a claimant after the property has been transferred from the court's control. (*Id.* at pp. 746–750.) Here, it is the transfer order itself that is disputed. While we agree with the Attorney General that we presently do not have the power to order the currency returned to Fields (assuming possession rests in the DEA), we do have the power to invalidate the turnover order.

## C. *The turnover order*

■ However, we agree with the Humboldt County District Attorney that the turnover order is valid. "When federal authorities seek to gain control over a *res* already in the control of a state court, the proper procedure is to seek [a] turnover order from that court." (*In re Seizure of Approx. 28 Grams of Marijuana, supra,* 278 F.Supp.2d at p. 1107.) Fields claims that the owner of the res is entitled to notice and a hearing before issuance of a turnover order, but fails to provide relevant support for that assertion. A turnover order is not a forfeiture; it does not divest ownership of the property but simply transfers the property to the federal government for a forfeiture proceeding. Upon initiation of the federal forfeiture proceeding, the property owner is provided with notice and a hearing compliant with due process. Accordingly, it has been held that "[t]he mere transfer of jurisdiction as accomplished by [a] turnover order therefore has no effect on the actual ownership of the property" and does not require "preseizure notice." (*Hawkins v. Henderson County* (E.D.Tex. 1998) 22 F.Supp.2d 573, 579; accord *Ivester v. Lee* (E.D. Mo. 1998) 991 F.Supp. 1113, 1120 ["no preseizure notice or hearing is required before a federal agency may seize personal property subject to forfeiture for violation of federal drug laws"].)

■ It must also be emphasized that no state forfeiture proceeding was ever initiated. Fields was a claimant, not a defendant, in superior court. Even

if we accept Fields's proposition that a property claimant is entitled to a hearing before property is transferred to the federal government for a forfeiture proceeding, Fields had a hearing. While the superior court issued its November 2003 turnover order ex parte, the order was later reconsidered and affirmed only after Fields was afforded the opportunity for briefing and a hearing. It is the later order, which followed a full hearing, that is the subject of this appeal. One is not prejudiced by issuance of an ex parte order where a hearing is subsequently provided before execution of the order. (*Israni v. Superior Court* (2001) 88 Cal.App.4th 621, 633–634 [106 Cal.Rptr.2d 48].)

■ Finally, we reach the crux of the matter: Did the superior court have the power to issue a turnover order in November 2003, after the statute of limitations for state forfeiture proceedings expired? The Humboldt County District Attorney now concedes that it "perhaps mistakenly" characterized the turnover order as a retroactive nunc pro tunc (literally, now for then) order that would antedate expiration of the statute of limitations. As Fields correctly points out, " ' "[t]he function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made." ' " (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890 [67 Cal.Rptr.2d 407].) The November 2003 turnover order was the first court order directing transfer of the subject currency. The turnover order was not the correction of a clerical error in a previous court order, and thus may not be given retroactive effect.

■ However, we disagree with Fields's claim that the superior court was precluded from issuing a turnover order in November 2003, and had no power other than to "dismiss the case" and return the currency to him. It is true that the expiration of the statute of limitations precludes the state from filing a petition for forfeiture, as the Humboldt County District Attorney rightly concedes. (Health & Saf. Code, § 11488.4, subd. (a).) But expiration of the statute of limitations did not terminate the superior court's jurisdiction over the subject property. It has been established on this appeal that the superior court acquired jurisdiction by virtue of both the search warrant it issued, as well as the claim filed by Fields. The property seized pursuant to the court-issued search warrant remained under the court's control until it issued a dispositional order, as it did here in ordering the property transferred to other governmental authorities. (Pen. Code, § 1536.) The turnover order was a valid exercise of the superior court's continuing in rem jurisdiction over the property.

## DISPOSITION

The order is affirmed.

Reardon, Acting P. J., and Rivera, J., concurred.