[No. C029097. Third Dist. Apr. 29, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
6344 SKYWAY, PARADISE, CALIFORNIA, Defendant;
COLLETTE HILL et al., Defendants and Appellants.

## COUNSEL

Michael P. LeLouis for Defendants and Appellants.

Michael L. Ramsey, District Attorney, and Howard W. Abbott, Assistant District Attorney, for Plaintiff and Respondent.

## OPINION

**HULL, J.**—In this civil forfeiture proceeding, we consider whether a person must pay storage costs accrued on property seized as proceeds of, or as items traceable to, narcotics trafficking when a jury has found that the property is not subject to forfeiture. (Health & Saf. Code, § 11470 et seq.)[1]

Appellants contend there is no statutory or other authority for that portion of the judgment entered in the trial court which requires them to pay storage and maintenance costs associated with property which the jury determined was not derived from drug trafficking proceeds. Appellants also contend the court erred in requiring them to pay a proportionate share of the sale and storage costs associated with property which the jury determined was traceable only in part to drug trafficking proceeds. We agree and modify the judgment.

### FACTS AND PROCEDURAL HISTORY

The facts are not in dispute.

The People initiated this civil forfeiture proceeding in 1992, seeking forfeiture of certain items of real and personal property on the ground that

---

[1]Under Health and Safety Code section 11494, "[For] any property seized or forfeiture proceeding initiated before January 1, 1994, the proceeding to forfeit the property and the distribution of any forfeited property shall be subject to the provisions of this chapter in effect on December 31, 1993, as if those sections had not been repealed, replaced or amended. Accordingly, the Health and Safety Code provisions regarding seizure or forfeiture proceedings in effect on December 31, 1993, control this action." (*People* v. *$497,590 United States Currency* (1997) 58 Cal.App.4th 145, 150 [68 Cal.Rptr.2d 185].) All citations to the Health and Safety Code are to the statutes which were in effect on December 31, 1993.

Health and Safety Code section 11470 reads: "The following are subject to forfeiture: [¶] . . . [¶] (f) All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance, all proceeds traceable to such an exchange . . . ." (Stats. 1990, ch. 1200, § 1, p. 5004.)

the property represented traceable proceeds of narcotics trafficking. (Health & Saf. Code, § 11470 et seq.; further section references are to the Health and Safety Code unless otherwise designated.)

Appellants are Collette Hill, Harold Hill and Carol Hill. William Hill is Collette's husband and Harold and Carol's son.[2]

The People's application for an order authorizing seizure of the property alleged that William Hill was acquainted through his work as a private investigator with a person not a party to this proceeding who was involved in the manufacture of methamphetamine, and that William Hill received from that person a " 'suitcase' or 'briefcase' " of cash "with instructions to 'launder' or 'invest' the money for the dealer."

Pursuant to that application, nearly 300 items of personal property—including aircraft, vehicles, tools, sports equipment, audio equipment, and home furnishings—were seized from claimants' homes or businesses. Bank accounts in their names were also seized. Most of the personal property seized was placed by Butte County law enforcement into storage with Roger Ernst & Associates, a licensed, bonded auctioneer.

William and Collette Hill filed a claim opposing forfeiture. (§ 11488.5.)[3] Harold and Carol Hill filed a separate but identical claim.

[2]William Hill was a claimant in the trial court and he too appealed from the judgment we review herein. His appeal, however, was dismissed for failure to file an opening brief. (California Rules of Court, rule 17(a).) For clarity, we shall refer to all four persons, collectively, as claimants.

[3]Former section 11488.5 provided in material part: "(a)(1) Any person claiming an interest in the property alleged to be subject to forfeiture may . . . file with the superior court . . . a verified claim stating the nature of his or her interest in the property. . . .

" . . . . . . . . . . . . . . . . . . . . . . . . .

"(e)(1) If a verified claim and answer are timely filed, the forfeiture proceeding shall be set for hearing pursuant to the rules of the court . . . .

"(2) The hearing shall be by jury, unless waived by the parties.

"(f) Forfeiture shall be ordered when, at the hearing, the People have shown that the property is subject to forfeiture pursuant to Section 11470, in accordance with the burden of proof set forth in subdivision (i) of Section 11488.4.

"(g) . . . The forfeiture hearing shall be conducted in accordance with Sections 600 to 630, inclusive, of the Code of Civil Procedure [fn.] Sections 600 to 605 repealed: See now C.C.P. § 190 et seq. [end fn.] if a trial by jury, and by Sections 631 to 636, inclusive, of the Code of Civil Procedure if by the court. Unless the court or jury finds that the property is subject to forfeiture pursuant to Section 11470, the court shall order the property released to the person it determines is entitled thereto.

"(h) If the court or jury finds that the property is subject to forfeiture, and finds that a person claiming an interest therein knew or should have known of facts which made the property subject to forfeiture pursuant to Section 11470, the court shall order that person's interest in the property be forfeited. If the court or jury does not make these findings, the court shall order that the person's interest in the property be returned. The People shall have

A lengthy jury trial ensued. (§ 11488.5, subd. (e)(2).) The jury was asked to determine which, if any, of the items seized were, in whole or in part, things of value exchanged for a controlled substance, or proceeds traceable to such an exchange within the meaning of section 11470 and thereby subject to forfeiture. The jury concluded some items were wholly traceable to drug trafficking proceeds, other items partly traceable to drug trafficking proceeds, and other items not traceable to drug trafficking proceeds at all.

By the end of trial, the seized items had been in storage for nearly four years.

In the course of preparing the form of judgment, the parties disagreed as to who should pay the costs of storage for those items seized, including 19 cars and a houseboat, which were declared not traceable to drug trafficking proceeds. One form of judgment proposed by the People would have required claimants to satisfy all storage costs attributable to seized items declared not traceable to drug trafficking before those items would be returned to claimants, on the theory that the People had probable cause to seize the property in the first place. The People also analogized the seized property to an automobile impounded because of its connection with the commission of a crime, in which circumstance the owner must pay the storage costs before the automobile may be returned to him. Claimants objected on the grounds they are innocent owners or "bona fide purchasers" of the property declared not traceable to drug trafficking proceeds and are thus excused from the payment of those costs by section 11489, subdivision (a);[4] that they have no contract for storage of the items; and logically that they should not be forced by the judgment to incur storage costs before their property is returned to them.

the burden of proving in accordance with the burden of proof set forth in subdivision (i) of Section 11488.4 that a person claiming an interest knew or should have known of facts which made the property subject to forfeiture pursuant to Section 11470." (Stats. 1990, ch. 1200, § 5, pp. 5009-5010.)

[4]Section 11489 provides in pertinent part: "Notwithstanding Section 11502 and except as otherwise provided by Sections 11473, 11473.2 and 11473.3, in all cases where the property is seized pursuant to this chapter and forfeited to the state or local governmental entity and, where necessary, sold by the Department of General Services or local governmental entity, the money forfeited or the proceeds of sale, and any interest accrued thereon, shall be distributed by the state or local governmental entity as follows:

"(a) To the bona fide or innocent purchaser, or encumbrancer, conditional sales vendor, or mortgagee of the property, if any, up to the amount of his or her interest in the property, when the court declaring the forfeiture orders a distribution to that person.

"(b) The balance, if any, to accumulate, and to be distributed and transferred quarterly in the following manner:

"(1) To the state agency or local governmental entity for all expenditures made or incurred by it in connection with the sale of the property, including expenditures for any necessary costs of notice required by Section 11484.4 and any necessary repairs, storage, or transportation of any property seized under this chapter." (Stats. 1989, ch. 1195, § 5, pp. 4609-4610.)

The trial court rejected the parties' respective arguments. It relied instead upon section 11489, subdivision (b)(1), which provides that, where property is seized and forfeited to the state, and, where necessary, sold, the money forfeited or the proceeds of sale shall be distributed (except as provided in subdivision (a)) as follows: "To the state agency or local governmental entity for all expenditures made or incurred by it in connection with the sale of the property, including expenditures for any necessary costs of notice . . . and any necessary repairs, storage, or transportation of any property seized under this chapter." (§ 11489, subd. (b)(1).) The trial court reasoned: "The governing principle of . . . Section 11489[, subdivision] (b)(1) appears to be that the recipient of the property is to pay the costs of its maintenance during the pendency of the litigation. Absent authority to the contrary, the court will apply this rule to the property to be returned as well. Therefore, it is concluded that the costs associated with maintenance of the property to be returned are to be born[e] by the real parties."

The subsequent "Judgment of Forfeiture (Following Jury Verdict)" states that, with regard to all items of defendant property not ordered "sold and/or which are required by the terms of this judgment and the jury verdict to be released and returned to specified parties, the fees and costs of the maintenance and storage of such items of defendant property shall be borne by the party or parties awarded or otherwise receiving such released property." The judgment also provides that those items found to be partly attributable to drug trafficking proceeds were to be sold, and the proceeds divided between the People and claimants according to the percentage interest specified in the verdicts. The parties sharing in the proceeds of sale were ordered to bear the fees and costs of sale, storage, and maintenance of the items "in proportion to the interest therein awarded them by the jury and [the] judgment."

## DISCUSSION

■  Claimants contend the trial court erred in concluding that section 11489 authorizes the court "to require [them] to pay for the cost of storage with respect to property that the jury determined is not subject to forfeiture."

■  We review de novo issues of statutory construction (*Berlin* v. *McMahon* (1994) 26 Cal.App.4th 66, 72 [31 Cal.Rptr.2d 427]), and issues relating to the application of statutes to undisputed facts (*Engs Motor Truck Co.* v. *State Bd. of Equalization* (1987) 189 Cal.App.3d 1458, 1464 [235 Cal.Rptr. 117]).

■  "The goal of statutory interpretation is determining legislative intent. To accomplish that goal, courts must look first to the language of the statute

and give effect to its plain meaning. If the words are clear, courts may not add to or change them to accomplish a purpose not apparent on the face of the statute or from its legislative history. [Citation.] ■ Moreover, notwithstanding the strong governmental interest in stemming illegal drug transactions, forfeiture statutes are disfavored and must be construed strictly in favor of the owner of the property." (*People* v. *Ten $500 etc. Traveler's Checks* (1993) 16 Cal.App.4th 475, 479 [20 Cal.Rptr.2d 128]; see also *People* v. *$28,500 United States Currency* (1996) 51 Cal.App.4th 447, 463 [59 Cal.Rptr.2d 239].)

■ "Forfeiture is a civil in rem action in which the property is proceeded against as a defendant on the legal fiction that the property itself is the guilty party." (*People* v. *$28,500 United States Currency, supra,* 51 Cal.App.4th at p. 462.) "[Sections 11470-11489] set forth the provisions of state law which allow for the seizure and forfeiture of property used for, and proceeds traceable to, unlawful drug transactions." (*People* v. *$400* (1993) 17 Cal.App.4th 1615, 1618 [22 Cal.Rptr.2d 161], and see cases cited therein.)

■ In deciding claimants were responsible for the costs of storage accrued on the property ordered returned to them, the trial court relied on section 11489, subdivision (b)(1).

Subdivision (a) of section 11489 requires that the proceeds of sale of forfeited property shall be distributed first to bona fide or innocent purchasers or other innocents with an interest in the property who suffer a loss by its forfeiture.

Subdivision (b)(1) of section 11489 provides that the proceeds of sale of forfeited property next shall be applied to pay for expenditures incurred in the sale of the property, including costs of notice required by section 11488.4 and necessary repairs, storage, or transportation of the property seized.

The balance of section 11489 directs distribution of the remaining proceeds according to a scheme not pertinent to this appeal.

The People do not agree with the trial court's interpretation of section 11489, but argue, nonetheless, that the judgment "cannot be said to be necessarily unfair[ because t]he party which prevailed as to any item of property received a benefit from the storage of such property . . . ."

The trial court's application of section 11489 to property which was determined to be exempt from forfeiture was erroneous as a matter of law.

By its own terms, section 11489 applies only to "cases where the property is seized pursuant to this chapter *and forfeited to the state . . . .*" (Italics added.) In light of this express limitation, it was not appropriate for the court to derive from section 11489 what it characterized as a "governing principle . . . that the recipient of the property is to pay the costs of its maintenance during the pendency of the litigation[,]" and to apply that "principle" to forfeited and nonforfeited property alike. Assuming section 11489 requires the state or local governmental entity to reimburse a warehouseman who has incurred the expense of storing forfeited property,[5] its plain language makes no mention of the disposition of property which is determined not subject to forfeiture. Section 11489 thus provides no support for the court's apparent conclusion that the Legislature intended to impose upon successful claimants the obligation to pay storage costs for property which has been adjudged not subject to forfeiture.

Moreover, the adjudication of claims to seized property—including the return of seized property adjudged not subject to forfeiture—is addressed in section 11488.5, not section 11489.

Subdivision (g) of section 11488.5 dictates the procedural rules which govern the conduct of the forfeiture hearing and states in pertinent part: "Unless the court or jury finds that the property is subject to forfeiture pursuant to Section 11470, the court shall order the property released to the person it determines is entitled thereto." Subdivision (h) of that section states: "If the court or jury finds that the property is subject to forfeiture, and finds that a person claiming an interest therein knew or should have known of facts which made the property subject to forfeiture pursuant to Section 11470, the court shall order that the person's interest in the property be forfeited. *If the court or jury does not make these findings, the court shall order that the person's interest in the property be returned.*" (Italics added.) Finally, subdivision (i) of section 11488.5 provides in pertinent part: "All property which was the subject of a forfeiture hearing and which was not released by the court to a claimant shall be declared by the court to be forfeited to the state. . . . [T]he clerk of the court shall provide for disposition of the forfeited property as set forth in Section 11489."

Sections 11488.5 and 11489 are not ambiguous, and the intent of the Legislature in enacting them is readily apparent from the language of the statutes alone. A determination that the property is not subject to forfeiture is tantamount to a finding that the government has failed in its attempt to

---

[5]The People contend to the contrary that ". . . Section 11489 does not affix responsibility for the payment of storage costs of forfeited property . . . ." It is not necessary for the purposes of this appeal to resolve that question.

establish a nexus between the property seized and drug trafficking. (*People v. $497,590 United States Currency, supra,* 58 Cal.App.4th at p. 154.) When the court or jury determines the seized property is not subject to forfeiture, no justification remains for withholding it from the claimant, and the court must order the property returned. (§ 11488.5, subd. (g).) If the claimant holds only a partial interest in an item of property, or if less than all of an item of property is declared forfeited, the court shall order the claimant's interest in the property returned to him. (§ 11488.5, subd. (h).)

Storage costs are not mentioned in section 11488.5, and nothing contained in that section suggests the Legislature intended that claimants be required to satisfy storage costs on their seized property before it may be returned, in whole or in part. To the contrary, these subdivisions indicate an intent by the Legislature that property determined not to be subject to forfeiture be released to the claimant without payment of storage costs. In addition, logic and equity compel the conclusion that a person who has successfully overcome efforts to associate his property with unlawful activity should not be obliged thereafter to underwrite those efforts.[6]

The Legislature's stated intention that a claimant's "interest in the property be returned" if the required findings for forfeiture are not made (§ 11488.5, subd. (h)) cannot be reconciled with a judgment obliging the claimant to satisfy storage costs before the property is returned. Where, as here, storage costs accrue over years and may exceed the value of the seized property, such a judgment will generally result in no interest remaining to be returned to the claimant or, worse, there may be a remaining unsatisfied obligation to the warehouseman even after the entire value of the claimant's interest has been applied to the storage debt. Nothing in the statute suggests the Legislature intended this result.

Accordingly, we conclude that, as to the items which are required by the judgment to be returned to the claimants, sections 11488.5 and 11489, respectively, provide no authority for the judgment's provision that the storage and maintenance fees associated with that property be borne by claimants. With respect to those items found to be partly traceable to drug trafficking and the items ordered sold, sections 11488.5 and 11489 provide no authority for charging the claimants' untainted share a proportionate amount for fees and costs of sale, storage, or maintenance.

---

[6]A similar result is expressly compelled by Vehicle Code sections governing the imposition of towing charges. The owner of an impounded car must pay towing and storage charges for the release of his vehicle or suffer its loss (Veh. Code, § 22851), unless he can prove that probable cause for towing and impounding his car did not exist, in which event the towing and storage costs are generally borne by the law enforcement entity responsible for the towing (Veh. Code, § 22852; *People* v. *Martinez* (1981) 118 Cal.App.3d 624, 633-634, fn. 5 [173 Cal.Rptr. 554]; 68 Cal.Ops.Atty.Gen. 94 (1985); see 69 Cal.Ops.Atty.Gen. 36 (1986)).

We reject the People's contention that, even if the forfeiture statutes provide no authority for requiring claimants to pay storage costs on seized property not ordered forfeited, the trial court may nonetheless enter a judgment which does so, pursuant to Code of Civil Procedure sections 128 and 187 and the inherent powers therein. The allocation of considerable storage costs for personal property seized but not forfeited under the statutory scheme created by sections 11470 through 11489 does not present, as the People argue, one of " 'the many vagaries of the litigation process' " properly consigned to the trial court's discretion.

### DISPOSITION

The "Judgment of Forfeiture (Following Jury Verdict)" filed in this matter on January 26, 1998, shall be modified in the following respects: on page nine, the second paragraph shall be deleted in its entirety and replaced with the following: IT IS ADDITIONALLY ORDERED, ADJUDGED, AND DECREED that for all items of defendant property, which under the terms of this judgment are to be sold and the proceeds of such sale distributed pursuant to the provisions of this judgment and Health and Safety Code Section 11489, the fees and costs of sale and storage associated with such items shall be paid from the proceeds of sale in accordance with the provisions of Health and Safety Code section 11489, subdivision (b)(1). To the extent that the proceeds of any such sale are to be divided among the parties in accordance with the terms of this judgment and the jury verdict, the fees and costs of sale, storage, and maintenance of the items so sold shall be paid from the percentage of sale proceeds ordered distributed to the plaintiff, the People of the State of California. Items of defendant property that are to be returned to claimants pursuant to this judgment shall be returned without assessment of costs of notice required by Health and Safety Code section 11488.4 or costs for their repair, storage, or transportation. As so modified, the judgment is affirmed. Claimants shall recover their costs on appeal.

Scotland, P. J., and Raye, J., concurred.